NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

SEP 25 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

TRAVELERS PROPERTY CASUALTY
COMPANY OF AMERICA, a Connecticut
corporation,

Plaintiff-Appellant,

v.

SALESFORCE.COM, INC., a Delaware
corporation,

Defendant-Appellee.

No.    21-15862

D.C. No. 3:20-cv-09443-VC

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted December 4, 2023
San Francisco, California

Before:  COLLINS, FORREST, and SUNG, Circuit Judges.

Plaintiff-Appellant Travelers Property Casualty Company of America

(Travelers) appeals the dismissal of this declaratory action brought against its

insured, Defendant-Appellee Salesforce.com, Inc. (Salesforce). After Salesforce

sold business software to Backpage.com, it was sued by multiple plaintiffs for

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

violating Texas law by aiding a business that plaintiffs allege compelled them into prostitution. The plaintiffs' cases are pending in a multidistrict litigation (MDL) in Texas.[1] Salesforce seeks defense costs and indemnification related to the MDL under its general commercial liability policy. After initially agreeing to defend Salesforce under a reservation of rights, Travelers brought this action seeking declarations that: (1) any duty to defend it owed Salesforce ceased when the MDL plaintiffs dropped their negligence claims; (2) it is owed reimbursement of all defense costs that it paid after the MDL plaintiffs dropped their negligence claims; and (3) it has no duty to indemnify Salesforce in the MDL. We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court.

Interpretation of an insurance policy is a legal question that we review de novo. *Trishan Air, Inc. v. Fed. Ins. Co.*, 635 F.3d 422, 426 (9th Cir. 2011). We also review de novo a dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023). We accept as true all well-pleaded allegations of material fact and construe them in favor of the non-moving party, here Travelers. *Id.*

---

[1]Salesforce's unopposed motion requesting that we take judicial notice of court filings in the *In re Jane Doe Cases* Texas MDL proceedings at issue here [Dkt. 31] is granted. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record.").

Under California law, which governs here, an insurer "must defend a suit which *potentially* seeks damages within the coverage of the policy." *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1966). The duty to defend is triggered if there is a "bare 'potential' or 'possibility'" that a third-party suit may result in liability for covered damages. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 300 (1993). But "the insurer need not defend if the third party complaint *can by no conceivable theory raise a single issue which could bring it within the policy coverage*." *Id.* (quoting *Gray*, 65 Cal. 2d at 276 n.15).

1.      Salesforce's policy covers third-party claims asserting "bodily injury" and "personal . . . injury." Coverage A provides that "[Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' . . . to which this insurance applies" and "will have the right and duty to defend the insured against any 'suit' seeking those damages." "Bodily injury" must be "caused by an 'occurrence,'" which is defined as an "*accident*, including continuous or repeated exposure to substantially the same general harmful conditions." The policy excludes "'[b]odily injury'. . . expected or intended *from the standpoint of the insured*."

Coverage B provides that "[Travelers] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal . . . injury' to which this insurance applies" and "will have the right and duty to defend the insured

3

against any 'suit' seeking those damages." "Personal injury" is defined as an "injury other than 'bodily injury,' which can include [f]alse arrest, detention or imprisonment." The policy excludes coverage for "'[p]ersonal injury' . . . caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal injury.'"

Travelers agreed to defend Salesforce in the MDL, reserving its rights to seek a declaration that the policy does not cover the MDL claims and to seek reimbursement of all defense costs paid. Travelers contends that any duty to defend it owed was extinguished when the MDL plaintiffs dropped their negligence claims because their remaining claims asserted under the Texas Sex Trafficking Statutes do not trigger coverage under Salesforce's policy. It is Travelers' burden to establish that its duty to defend was extinguished. *See Prichard v. Liberty Mut. Ins. Co.*, 84 Cal. App. 4th 890, 902 (2000), *as modified on denial of reh'g* (Dec. 6, 2000) ("[W]here there was no question of an *initial duty to defend*, but there was a dispute over whether . . . the duty to defend . . . terminated," "the duty to defend continues 'until the insurer proves otherwise.'" (quoting *Hartford Accident & Indem. Co. v. Superior Ct.*, 23 Cal. App. 4th 1774, 1781 (1994))).

Travelers argues that the Texas Sex Trafficking Statutes impose civil liability only for intentional conduct that falls outside the scope of "bodily injury" arising from an "accident." "Accident" is an undefined term, and Travelers relies on the

4

California Supreme Court's definition of "accident" as an "unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause," *Delgado v. Interinsurance Exch. of Auto. Club of S. Cal.*, 47 Cal. 4th 302, 308 (2009) (citation omitted), and argues that Salesforce can only be held liable in the MDL for "inherently knowing or intentional actions, not actions that Salesforce could have taken by accident." We disagree. Texas's statute permits victims to recover damages from a defendant who "knowingly or intentionally engages in promotion of prostitution, online promotion of prostitution, aggravated promotion of prostitution, or aggravated online promotion of prostitution *that results in compelling prostitution with respect to the victim.*"[2] Tex. Civ. Prac. & Rem. Code § 98A.002(a)(2) (emphasis added).[3] This statute plainly does not attach the intent

[2]"A person commits an offense [of compelling prostitution] if the person knowingly (1) causes another by force, threat, coercion, or fraud to commit prostitution; (2) causes by any means a child younger than 18 years to commit prostitution, regardless of whether the actor knows the age of the child at the time of the offense; or (3) causes by any means a disabled individual . . . to commit prostitution, regardless of whether the actor knows the individual is disabled at the time of the offense." Tex. Penal Code § 43.05(a); *see* Tex. Civ. Prac. & Rem. Code § 98A.001(4) (adopting the Penal Code definition).

[3]The MDL plaintiffs asserted claims under both § 98A.002(a) and § 98.002(a). Because we hold that Travelers has a duty to defend Salesforce for potential liability arising under § 98A.002(a)(2), we do not address whether § 98.002(a)(2) also triggers Travelers' duties under the policy. *See Hartford Cas. Ins. Co. v. J.R. Mktg., LLC*, 61 Cal. 4th 988, 997–98 (2015) ("[W]hen the third party suit includes some claims that are potentially covered, and some that are clearly outside the policy's coverage, the law nonetheless implies the insurer's duty to defend the entire action.").

5

requirement to the result clause—"results in compelling prostitution with respect to the victim." *Id.*

The adverbs "knowingly or intentionally" modify the phrasal verb "engages in" and its direct objects: "promotion of prostitution, online promotion of prostitution, aggravated promotion of prostitution, [and] aggravated online promotion of prostitution." *Cf. Rehaif v. United States*, 588 U.S. 225, 229–30 (2019) ("The term 'knowingly' in [the statute] modifies the verb 'violates' and its direct object . . . . The proper interpretation of the statute thus turns on what it means for a defendant to know that he has 'violate[d]' [the statute]." (third alteration in original)). The subordinate result clause indicates the consequence of the phrasal verb acting upon the direct object. That is, while a defendant must knowingly or intentionally commit an act that promotes prostitution, the defendant need not have known or intended that its actions *would result in* compelled prostitution.

Under California law, "accident" refers to "the *conduct of the insured* for which liability is sought to be imposed." *Liberty Surplus Ins. Corp. v. Ledesma & Meyer Constr. Co.*, 5 Cal. 5th 216, 221 (2018) (quoting *Delgado*, 47 Cal. 4th at 311). An insured's intentional act that results in unintended consequences may be considered an accident when "some additional, unexpected, independent, and unforeseen happening occurs that produces the damage." *Id.* at 225 (quoting *Merced Mut. Ins. Co. v. Mendez*, 213 Cal. App. 3d 41, 50 (1989)).

Here, Salesforce could potentially be held liable under Texas's statute for selling software to Backpage.com even though the harm being remedied by the statute—compelled prostitution—would not have occurred absent an additional act that was "unexpected, independent, and unforeseen" by Salesforce. It does not automatically follow that selling business software, even to a business known to promote prostitution, will result in victims being *compelled* into prostitution. Because § 98A.002(a)(2) does not require proof that Salesforce intended or knew that selling its business software to Backpage.com would "result[] in compelling prostitution," it is possible that Salesforce may be held liable for an "unexpected, unforeseen, or undesigned happening or consequence" of its actions. *Delgado*, 47 Cal. 4th at 308 (citation omitted).

Travelers argues this is an improper reading of Texas's statute because in *In re Facebook, Inc.*, 625 S.W.3d 80 (Tex. 2021), the Texas Supreme Court interpreted "knowingly" as involving affirmative, overt conduct, *id.* at 96, and therefore "the claims alleged against Salesforce . . . do not implicate conduct that is accidental[] [because] they require proof of intentional wrongdoing." Travelers overstates the implications of *In re Facebook*. In that case, the Texas Supreme Court held that the plaintiffs there were precluded by the Communications Decency Act, 47 U.S.C. § 230, from asserting negligence claims against Facebook based on allegations that Facebook identified sex-trafficking targets, connected traffickers with those targets,

and encouraged traffickers to use its platforms to traffic victims. *Id.* at 93–96. Nothing in *In re Facebook* precludes imposing liability under Texas's statute for intentionally or knowingly "promoting" prostitution where the defendant did not also know or intend that its conduct would "result[] in compelling prostitution." Tex. Civ. Prac. & Rem. Code § 98A.002(a)(2).

Because the MDL plaintiffs' § 98A.002(a)(2) claims may impose liability on Salesforce that triggers coverage under its policy, Travelers' duty to defend has not been extinguished. *See Montrose Chem. Corp.*, 6 Cal. 4th at 300.

2.      Travelers also argues that it has no duty to defend because the policy excludes coverage for "bodily injury" resulting from intended or expected acts, as well as "personal injury" "caused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal . . . injury.'" Under California law, policy exclusions generally must be "interpreted narrowly against the insurer." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008) (citation omitted); *see also Delgado*, 47 Cal. 4th at 313 (explaining that courts should exercise more caution in denying coverage based on exclusionary clauses as opposed to finding a lack of coverage in the first instance based on an affirmative coverage clause). The exclusion on which Travelers relies does not bar coverage for the same reasons that the MDL plaintiffs' statutory claims may trigger affirmative coverage. *See Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App.

8

4th 715, 747 (1993) (concluding that the phrase "expected or intended" precludes coverage for damage that the insured subjectively intended to be a result of its conduct, as well as damage that it in fact subjectively foresaw as practically certain to be a result of its conduct). A plain reading of Texas's sex-trafficking statute covers more than conduct that a defendant knows or intends will result in compelled prostitution.

3.     Because we conclude that Travelers still has a duty to defend Salesforce in the ongoing MDL, Travelers is not entitled to reimbursement of defense costs. *See Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993), *as modified on denial of reh'g* (May 13, 1993) ("Once the defense duty attaches, the insurer is obligated to defend against all of the claims involved in the action, both covered and noncovered, until the insurer produces undeniable evidence supporting an allocation of a specific portion of the defense costs to a noncovered claim."). Nor is it entitled to declaratory relief regarding its duty to indemnify at this point. *Hartford Cas. Ins.*, 59 Cal. 4th at 287 ("[T]he obligation to indemnify . . . is only determined when the insured's underlying liability is established." (quoting *Ringler Assocs. Inc. v. Md. Casualty Co.*, 80 Cal. App. 4th 1165, 1185 (2000))).

**AFFIRMED.**

9